IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JOHN RAWLINGS, | CV 19-97-BLG-TJC |
| Plaintiff, | |
| vs. | **ORDER** |
| STEVE KUNNATH, in his official and individual capacities, JOHN DOE, in his official and individual capacities, CITY OF LIVINGSTON, MONTANA, and JAY PORTEEN, in his individual capacities, | |
| Defendants. | |

Plaintiff, John Rawlings ("Rawlings"), brings this action against Defendants Steve Kunnath ("Kunnath"), the City of Livingston, Montana ("Livingston") and Jay Porteen ("Porteen"), (collectively "Defendants") alleging violation of his civil rights and various state law claims arising from a DUI investigation, arrest and prosecution.  (Doc. 1.)

Presently before the Court are Defendants Livingston and Porteen's Motion for Summary Judgment (Doc. 32), and Defendant Kunnath's Motion for Summary Judgment (Doc. 42.)  The motions are fully briefed and ripe for the Court's review.

Having considered the parties' submissions, the Court finds the motions should be **GRANTED**.

1

## I.      FACTUAL BACKGROUND[1]

On the evening of January 16, 2019, Livingston Police Officer Steve Kunnath and other City of Livingston Police Officers were conducting a criminal investigation concerning an incident unrelated to Rawlings that occurred earlier that evening.  The live and ongoing criminal investigation began when the Livingston Police Department received a 9-1-1 call regarding a group of people fighting at a local gas station.  All four officers on duty at the time responded.  While en route to the gas station, Kunnath was notified that the individuals involved in the physical altercation had left the scene in separate vehicles, and one of the suspect vehicles had been stopped near the intersection of Lewis and 11th Avenue in Livingston.  Kunnath changed course to respond to that location as a backup officer.

When Kunnath arrived, he stayed back and monitored the surrounding area to provide safety for the situation and the officers on the scene.  The suspect vehicle that had been stopped had only one occupant.  The other individuals involved in the fighting incident had not been located.  The suspect who was involved in the traffic stop was known to police to be involved in drug-related activity.

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment and are taken from the parties' submissions and are undisputed except where indicated.

At approximately 9:00 p.m., Rawlings was driving his 2016 Jeep Cherokee on West Park Street when he encountered the traffic stop.  He "circled back" to where the police had initiated the stop, then pulled his car over on the side of the street.  Rawlings parked his vehicle facing east on West Lewis Street, about one city block from the police officers standing by their vehicles at the intersection of South 11th and West Lewis Street.  He was parked in front of a closed restaurant. Kunnath observed Rawlings parked there.

Based on Kunnath's training and experience, an onlooker approaching an ongoing criminal investigation can present an officer safety issue, and there can be concern that an onlooker is involved with the potential illegal activity and criminal investigation.  The fact that Rawlings' vehicle was parked near the criminal investigation; the nearby restaurants and businesses were closed; there were no houses in the immediate area; and Rawlings' vehicle did not drop anyone off and no one got out of the vehicle, raised some concern for officer safety.

After sitting and watching the officers for approximately 10 minutes, Rawlings drove his car around the triangle shaped city block and repositioned his vehicle facing south on S. 11th Street, which was closer in proximity to the officers' location near the intersection of S. 11th and W. Lewis Street.  Rawlings' vehicle was positioned so that the headlights were pointed directly at the officers standing nearby.  Rawlings disputes that his headlights were on but acknowledged

3

in his deposition testimony that there was a possibility they were on.  He further acknowledged that an officer could be concerned that a car shining its headlights towards the officer could present some risk to officer safety.

Rawlings' conduct was concerning to Kunnath and the other officers, and raised their suspicions about his potential involvement with the earlier incident, his possible involvement with other illegal activity, and the potential threat to officer safety.  Therefore, after waiting few minutes, Livingston Police Sergeant Wayne Hard instructed Kunnath and Officer Jason Gunderson to approach Rawlings' vehicle.

Kunnath and Gunderson walked up to Rawlings' car and engaged him in conversation.  Rawlings acknowledged that the officers had a good reason to approach his vehicle.  Kunnath advised Rawlings that the officers saw him pull up and they wanted to make sure he was not involved with the prior incident or the suspect in the traffic stop.  Rawlings explained that he was "seeing what was going on."  Kunnath told Rawlings that it was okay for him to watch.[2]

---

[2] Rawlings purports to dispute that Kunnath made this statement.  (Doc. 47 at ¶ 29.)  But Rawlings does not cite any evidence, such as his affidavit, to oppose this fact.  As such, the fact remains undisputed.  *Metcalf v. ONEOK, Inc.*, 2019 WL 2746037, *3 (D. Mont. June 12, 2019), *report and recommendation adopted by* 2019 WL 2745740 (D. Mont. July 1, 2019) (explaining facts may be deemed admitted when not properly opposed); L.R. 56.1(b)(1)(B); Fed. R. Civ. P. 56(e)(2).

Kunnath was standing very close to Rawlings during the exchange, and he observed Rawlings' watery bloodshot eyes and smelled the odor of alcohol. Kunnath also noticed an open beer container in Rawlings' center console which had a cork in it.  Rawlings told Kunnath that he used the beer bottle as an ashtray. Kunnath further indicated that Rawlings appeared a little confused during their interaction.  Gunderson also smelled alcohol and observed alcoholic beverage containers in Rawlings' back seat, which appeared to be Guinness beer.  Rawlings purports to dispute that the officers could have smelled alcohol.[3]

---

[3] Rawlings disputes that Kunnath could have smelled alcohol stating he was smoking a cigarette, and therefore it "would not have been possible to determine." (Doc. 47 at ¶¶ 30-31.)  He also asserts that "Alcohol has no smell."  (*Id.* at ¶ 37.) Rawlings assertions, however, are not properly supported by any evidence.  The only fact averred in Rawlings' supporting Affidavit was that he was smoking a cigarette when Kunnath approached his vehicle and the smell of smoke would have been present in his vehicle.  (Doc. 47-1 at ¶¶ 5-6.)  He does not cite any authority, or evidence, however, that alcohol has no smell or that it could not have been detected on his person by the officers.  Rawlings' arguments, unsupported opinions, and conjecture lack evidentiary value and are ineffective to create a genuine dispute of fact. *Wagemann v. Robinson*, 2015 WL 3899226, *13 (D. Mont. June 16, 2015).  Rawlings also purports to dispute that the officers observed other signs of impairment.  Rawlings avers that "Kunnath immediately insisted me to exit my vehicle despite not having any evidence to suggest that I was intoxicated" (Doc. 47-1 at ¶ 6) and that "there was nothing to suggest that I had bee[n] drinking." (Doc. 40-1 at ¶ 11).  Rawlings' conclusory and unsupported statements, however, are insufficient to raise a genuine issue of fact. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (noting a summary judgment motion cannot be defeated by relying on conclusory allegations).

Kunnath asked Rawlings if he had consumed alcohol, and Rawlings stated he had one drink at the Chop House around 5:00 or 7:00 p.m. that evening. Kunnath knows from his training and experience that individuals who have been driving under the influence of alcohol may downplay or minimize the amount of alcohol they consumed prior to driving. Rawlings later conceded at his deposition that it was possible that he had one martini and another vodka drink that night.

Based on his observations, Kunnath suspected Rawlings may have been driving while under the influence of alcohol. Kunnath, therefore, asked Rawlings to exit his vehicle so that he could perform field sobriety tests. First, Kunnath performed the Horizontal Gaze Nystagmus (HGN) test on Rawlings. Kunnath observed six out of six clues indicating impairment.[4] Four are needed to fail the test. Next, Kunnath instructed Rawlings to perform the walk and turn test.

---

[4] Rawlings states in his Statement of Disputed Facts that Kunnath did not properly administer the HGN test "per NHTSA guidelines." (Doc. 47 at ¶ 40.) But Rawlings fails to cite any evidence in support of this purported fact. Rather, the statement appears to be nothing more than an argument of counsel. A party opposing summary judgment cannot manufacturer a contested fact by relying on unsupported, conclusory and argumentative statements of counsel. *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.,* 289 F.3d 589, 593 n. 4 (9th Cir. 2002) ("[A]rguments and statements of counsel are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment."); *Wagemann*, 2015 WL 3899226 at *13 (noting argument of counsel is not probative evidence). As such, Rawlings fails to raise a triable issue with regard to the HGN test.

Kunnath observed that Rawlings stepped off the line, made an improper turn and stopped during the test.  He scored Rawlings as exhibiting three out of eight observable clues to impairment.  Two are needed to fail the test.  Kunnath then instructed Rawlings to perform the one-leg stand maneuver.  Kunnath did not score Rawlings any points on the test because he believed Rawlings was not performing the test correctly.

After administering the field sobriety tests, Kunnath conferred with Gunderson who also observed Rawlings perform the tests.  Following their discussion, Kunnath requested that Rawlings take a preliminary breath test (PBT). Rawlings responded that he "would prefer not to."  Both Kunnath and Gunderson concluded there was probable cause to arrest Rawlings for Driving Under the Influence.  Rawlings was therefore placed under arrest.

Kunnath transported Rawlings to the Park County Detention Center, where Rawlings was again provided the opportunity to take a breath test on the intoxilyzer at the jail.  Rawlings again declined.  Rawlings was charged with Driving Under the Influence of Alcohol, first offense.

Immediately following his release from jail, Rawlings obtained an independent blood test, which came back negative for all substances, including alcohol.  The following day, Rawlings, through his attorney, supplied the blood

test results to Defendant Porteen, the city prosecutor.  Porteen declined to dismiss the charge.

Rawlings appeared in the City Court of Livingston on or about January 22, 2019 and entered a plea of not guilty to the charge.  The charge was later dismissed on the request of the prosecutor on May 21, 2019.

On September 17, 2019, Rawlings filed this action.  (Doc. 1.)  Rawlings alleges civil rights claims under § 1983 for violation of the Fourth and Fourteenth Amendment against Kunnath (Count I), Livingston (Count III) and Porteen (Count V), and state law claims for false imprisonment against Kunnath (Count II), respondeat superior against Livingston (Count IV), actual malice/punitive damages against Porteen (Count VI), and negligence against Porteen (Count VII).

Livingston and Porteen now move for summary judgment as to Rawlings' claims in Counts III, IV, V, VI and VII.  (Doc. 32.)  Kunnath moves for summary judgment on Rawlings' claims in Counts I and II.  (Doc. 42.)

## II.   LEGAL STANDARDS

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those which may affect the outcome

of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at

9

252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

### A.     Count I - § 1983 Claim Against Kunnath

Rawlings brings a § 1983 claim against Kunnath, alleging Kunnath violated his rights under the Fourth and Fourteenth Amendments to be free from an unreasonable search and seizure of his person. Kunnath argues the doctrine of qualified immunity bars Rawlings' § 1983 claim against him.

Qualified immunity shields state officials from civil liability under 42 U.S.C. § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is 'an *immunity from suit* rather than a mere defense to liability.' Thus, '[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is

dispositive.'" *Conner v. Heiman*, 672 F.3d 1126, 1130 (9th Cir. 2012) (emphasis in original) (internal citations omitted).

"To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016). The court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The court must resolve the issue of qualified immunity "as a matter of law when 'the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts.' Only where 'historical facts material to the qualified immunity determination are in dispute' should the district court submit the issue to a jury." *Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) (internal citations omitted).

Kunnath argues his conduct did not violate a constitutional right and that qualified immunity applies under the "clearly established" prong. The Court finds Kunnath is entitled to qualified immunity because his conduct did not violate Rawlings' constitutional rights.

/ / /

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  Not every contact between police officers and citizens involve the "seizure" of a person, and the "Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."  *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).   Police-citizen encounters generally fall into three categories under the Fourth Amendment:

> First, police may stop a citizen for questioning at any time, so long as that citizen recognizes that he or she is free to leave.  Such brief, "consensual" exchanges need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered seizures.  Second, the police may "seize" citizens for brief, investigatory stops.  This class of stops is not consensual, and such stops must be supported by "reasonable suspicion."  Finally, police stops may be full-scale arrests.  These stops, of course, are seizures, and must be supported by probable cause.

*Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir. 1993) (citations omitted).

Kunnath contends (1) his initial encounter with Rawlings was not a constitutional seizure; (2) even if a seizure had occurred, particularized suspicion existed for the initial contact; (3) the initial interaction ripened into a DUI investigation based on particularized suspicion; and (4) he had probable cause to arrest Rawlings for DUI.  In responding to Kunnath's motion for summary judgment as to his § 1983 claim, Rawlings does not challenge the constitutionality of Kunnath's actions up to the point of arrest; he argues only that Kunnath lacked

probable cause to arrest him.[5]  (*See* Doc. 46 at 12-13.)

To determine whether an officer had probable cause for an arrest, the court must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Dist. of Columbia v. Wesby*, ___ U.S. ___, 138 S.Ct. 577, 586 (2018).   "Probable cause exists if, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the individual had committed a

---

[5] Rawlings does argue the lack of particularized suspicion in connection with his false imprisonment claim.  (Doc. 46 at 17-21.)  Nevertheless, the undisputed evidence shows the initial encounter was not a seizure, and Kunnath had reasonable suspicion to elevate the consensual interaction to an investigatory stop. Not all contact "between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred. *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968).  Here, Rawlings admitted that he voluntarily parked in a public location to watch the officers, agreed the officers had a good reason to approach his vehicle, and acknowledged he voluntarily answered their questions.  (Doc. 44-4 at 5, 7-8 14.)  As such, no seizure occurred until Kunnath expanded his inquiry into whether Rawlings was intoxicated.  Once at Rawlings' vehicle, Kunnath's observations of the smell of alcohol, Rawlings watery bloodshot eyes, and the open beer bottle supported commencing the DUI investigation.  At that point, the undisputed facts gave rise to particularized suspicion of criminal activity justifying further investigation, including field sobriety tests. *See e.g. Hulse v. State*, 961 P.2d 75, 87 (Mont. 1998) ("[I]f an officer stops a driver for a broken taillight and upon approaching this driver the officer does observe signs of intoxication, e.g., the driver's breath smells of alcohol, his eyes are bloodshot and glassy, or his speech is slurred, the officer would have a separate particularized suspicion that the individual was driving under the influence of alcohol, and therefore, may administer field sobriety tests.").

crime." *United States v. Hernandez*, 322 F.3d 592, 596 (9th Cir. 2003).  Probable

cause "requires only a probability or substantial chance of criminal activity, not an

actual showing of such activity.  Probable cause is not a high bar." *Wesby*, 138

S.Ct. at 586 (internal quotations and citations omitted).

Kunnath arrested Rawlings for the offense of DUI.  Under Montana law,

"[i]t is unlawful . . . for a person who is under the influence of . . . alcohol to drive

or be in actual physical control of a vehicle upon the ways of this state open to the

public."  Mont. Code. Ann. § 61-8-401(1)(a).  "'Under the influence' means that as

a result of taking into the body alcohol, drugs, or any combination of alcohol and

drugs, a person's ability to safely operate a vehicle has been diminished."  § 61-8-

401(3)(a).

Here, considering the totality of the circumstances known to Kunnath, the

Court finds he could have reasonably concluded there was a fair probability

Rawlings committed the offense of DUI.  There is no material dispute as to the

totality of the information known to Kunnath during his encounter with Rawlings.

During his initial exchange with Rawlings, Kunnath observed indications of

possible intoxication, including the odor of alcohol and Rawlings' watery

bloodshot eyes.  Gunderson likewise smelled alcohol.  Kunnath saw there was an

open beer container in Rawlings' center console, and Gunderson saw what

appeared to be Guinness beer in Rawlings' backseat.  Further, Rawlings admitted

that he had consumed alcohol earlier that evening at the Rib & Chop House. Kunnath also observed that Rawlings appeared somewhat confused.  Based on these observations, Kunnath asked Rawlings to exit his vehicle and perform the field sobriety tests.

The field sobriety tests revealed several indicia of impairment.  Rawlings failed the HGN and walk and turn tests, and was unable to perform the one-leg stand maneuver correctly.  Thereafter, Kunnath requested that Rawlings take a PBT, but Rawlings declined.  It is well-established that an officer's observations, including the failure of field sobriety tests, can result in a reasonable belief that there exists a fair probability that the crime of DUI has been committed.  *See e.g. Hulse v. State*, 961 P.2d 75, 95 (Mont. 1998); *Bauer v. State*, 910 P.2d 886, 887, 890 (Mont. 1996); *Brown v. State*, 203 P.3d 842, 847 (Mont. 2009); *Fuller v. City of McMinnville*, 2012 WL 2992906, *8-9 (D. Or. July 20, 2012); *Spies v. City of Scottsdale*, 2013 WL 1339896, *8 (D. Ariz. Apr. 1, 2013).

Rawlings argues Kunnath lacked probable cause to arrest him for DUI on the basis that he was not exhibiting staggered movements, obscene language, or obnoxious and aggressive behavior.  But Montana law does not require a person to be in a falling-down, out-of-control state of intoxication to be arrested for DUI. Rather, the statute only proscribes operating a vehicle with "diminished" faculties.

Mont. Code Ann. § 61-8-401(3)(a).  Here, as noted, Rawlings displayed several universally accepted observable indicators of impairment.

Rawlings also asserts probable cause was lacking because there is no evidence of failed field sobriety tests.  Rawlings' contention, however, is contradicted by the undisputed facts.  Rawlings does not dispute that he failed the walk and turn test or that he did not correctly perform the one-leg stand maneuver.  The only field sobriety test Rawlings attempts to dispute is the HGN.  But, as noted above, he fails to raise a triable issue with regard to the HGN test, since he did not cite any evidence to support his conclusory assertion that Kunnath did not properly administer the test.

Rawlings further argues probable cause was lacking because "just an ashtray bottle" supported Kunnath's suspicion that Rawlings was impaired.  The undisputed record, however, demonstrates the presence of several other observable indicators of impairment.  Rawlings does not dispute that in addition to the beer bottle in the center console, other alcoholic beverage containers were visible in the back seat.  He also does not dispute the officer's observations of his watery bloodshot eyes, that he appeared somewhat confused, or that he admitted to consuming alcohol that evening.  The only other indicator Rawlings attempts to dispute is the officers' observations of the odor of alcohol.  But as noted above, Rawlings fails to create a genuine dispute on that point.  Regardless, even without

the odor of alcohol or the HGN test, the totality of the remaining circumstances supports a finding that Kunnath possessed probable cause to arrest Rawlings for DUI.

In addition, Rawlings contends that the blood test he obtained after he was released from jail demonstrated that he was not under the influence of alcohol or any other substance.  But the results of the blood test were not available to Kunnath at the time of Rawlings' arrest.  The blood test results, therefore, do not undermine the Court's conclusion that Kunnath could have reasonably concluded there was a fair probability Rawlings was impaired.  *Spies*, 2013 WL 1339896 at *8 (finding the plaintiff's subsequent negative blood test for alcohol did not make the arresting officer's  conclusion at the time of her arrest unreasonable); *Henry v. United States*, 361 U.S. 98, 102 (1959) ("If the officer acts with probable cause, he is protected even though it turns out that the citizen is innocent."); *Acosta v. City of Costa Mesa*, 718 F.3d 800, 826 (9th Cir. 2013) ("An officer is entitled to immunity where a reasonable officer would believe that probable cause existed, even if that determination was a mistake.").  As such, the Court finds Kunnath had probable cause to arrest Rawlings for DUI, and he is therefore, entitled to qualified immunity.

Curiously, Rawlings contends for the first time in his response brief that Kunnath violated his First Amendment rights by arresting him.  But Rawlings did

17

not plead any First Amendment claim – or even mentioned the First Amendment – in the Complaint.  Rawlings' argument, therefore, is misplaced, inapplicable to the claims he actually asserted, and will be disregarded.  *Bullard v. Wastequip Mfg. Co. LLC*, 2015 WL 12766467, *10 (C.D. Cal. Apr. 14, 2015) ("It is well-settled in the Ninth Circuit that parties generally cannot assert unpled theories for the first time at the summary judgment stage."); *Jack Palmer & Carwerks v. City of Missoula*, 2016 WL 247564, *4 (D. Mont. Jan. 20, 2016) (declining to consider plaintiff's newly-asserted, unpled constitutional violation in response to motion for summary judgment); *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings.").

In sum, the Court finds based on the undisputed facts that Kunnath had probable cause to arrest Rawlings for DUI.  As such, Kunnath did not violate Rawlings' constitutional rights.  Because the Court finds Kunnath did not violate a constitutional right, it is unnecessary to reach the "clearly established" prong of the qualified immunity test.  Kunnath is entitled to qualified immunity, and summary judgment will be entered in his favor on Count I.

/ / /

/ / /

/ / /

18

## B.   Count II – False Imprisonment Claim Against Kunnath

Rawlings alleges a state law claim for false imprisonment against Kunnath.[6] Kunnath argues the claim fails as a matter of law, and that he is entitled to immunity under Montana Code Ann. § 2-9-305(5) from liability for any state law claims.

There are two components of a claim for false imprisonment under Montana law: (1) the restraint of an individual against his will, and (2) the unlawfulness of the restraint. *Kichnet v. Butte-Silver Bow Cty.*, 274 P.3d 740, 745 (Mont. 2009). "It is well-settled that a court's determination of probable cause is a complete defense to a claim of false arrest or imprisonment leveled against the charging party." *Id.* Accordingly, a claim for false imprisonment fails as a matter of law where the defendant demonstrates the existence of probable cause. *Oram v. Dolan*, 2012 WL 5987187, at *9 (D. Mont. Aug. 2, 2012), *report and recommendation*

---

[6] Rawlings also made a passing reference in the Complaint that Kunnath "assaulted" and "battered" him. (Doc. 1 at ¶ 2.) Rawlings did not, however, plead an express claim for assault and battery. But to the extent such claim is alleged, the Court finds Kunnath is entitled to summary judgment. A police officer may use such force as is reasonably necessary to effect a lawful arrest. To commit a battery, a police officer must use more force than is reasonably necessary. *Smith v. Roosevelt County*, 788 P.2d 895, 900 (Mont. 1990). Kunnath's dash cam video captured the administration of the field sobriety tests and Rawlings' arrest. The video does not show any indication of excessive force, and Rawlings acknowledged at his deposition that he was not assaulted or battered. (Doc. 44-4 at 9-10.) As such, no genuine issue of material fact exists as to any purported assault and battery.

19

*adopted*, 2012 WL 5987140 (D. Mont. Nov. 29, 2012) (dismissing false imprisonment claim due to the existence of probable cause).

The Court has determined Kunnath had particularized suspicion to investigate Rawlings for DUI, and probable cause to arrest him under the totality of the circumstances.  As such, Kunnath's restraint of Rawlings was lawful, and cannot support a false imprisonment claim.

Kunnath is therefore entitled to summary judgment on Count II.[7]

---

[7] Kunnath is also immune from individual liability under Montana Code Ann. § 2-9-305(5), which provides:

> Recovery against a governmental entity under the provisions of parts 1 through 3 of this chapter constitutes a complete bar to any action or recovery of damages by the claimant, by reason of the same subject matter, against the employee whose negligence or wrongful act, error, omission, or other actionable conduct gave rise to the claim.  In an action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment, unless the claim constitutes an exclusion provided in subsections (6)(b) through (6)(d).

In order for immunity to attach under § 2-9-205(5), the plaintiff must (1) name a governmental entity as a defendant, and (2) the governmental entity must acknowledge or be bound by a judicial determination that the employee's conduct upon which the claim was brought arose out of the course and scope of his employment.  Mont. Code Ann. § 2-9-205(5).

Here, Livingston, a government entity, is a named defendant.  All of Rawlings' allegations against Kunnath are based on actions he performed while in the course and scope of his employment as a law enforcement officer.  Livingston has also acknowledged that Kunnath was acting in the course and scope of his

### C.   Count III - § 1983 Claim Against Livingston

Rawlings has asserted a *Monell*[8] claim against Livingston based on Kunnath's implementation of a city policy or custom and/or due to Livingston's inadequate hiring and supervision of Kunnath.  (Count III.)  Livingston moves for summary judgment as to this count on grounds that: (1) no civil rights violation occurred; and (2) even if there was a constitutional violation, Rawlings has failed to provide sufficient evidence to support a *Monell* claim under any of the avenues to municipal liability.

As noted above, the Court has determined Kunnath's conduct in this case did not deprive Rawlings of a constitutional right.  As such,  Rawlings' § 1983 claim against Livingston necessarily fails.  *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir.1994) ("While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights.  Here, the municipal defendants cannot be held liable because no constitutional violation occurred."); *Yousefian v. City of Glendale*, 779 F.3d 1010, 1016 (9th Cir. 2015) ("[M]unicipalities cannot be held liable when the individual police officer has

---

employment when he arrested Rawlings.  (Doc. 44 at ¶ 7.)  No evidence suggests Kunnath was acting outside his role as City of Livingston Police officer at any time relevant to Rawlings' claims.  Consequently, Kunnath is immune under § 2-9-205(5) from individual liability for state law claims.

[8] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

21

inflicted no constitutional injury.").

Livingston is therefore entitled to summary judgment on Count III.

### D.     Count IV – Respondeat Superior Claim Against Livingston

Rawlings seeks to hold Livingston vicariously liable for false imprisonment based on Kunnath's arrest and malicious prosecution based on Porteen's continued prosecution.  (Count IV.)  Livingston argues Rawlings' claim fails as a matter of law.

The Court has found probable cause existed for Rawlings' arrest.  Therefore, Kunnath did not engage in any wrongful conduct that can be imputed to Livingston.  Further, Rawlings has conceded his claims against Porteen.  As such, there is no basis for vicarious liability with regard to Porteen.

Livingston is, therefore, entitled to summary judgment on Count IV.

### E.     Counts V-VII – Claims Against Porteen

Rawlings has alleged claims against Porteen for violation of his civil rights (Count V), actual malice/punitive damages (Count VI), and negligence (Count VII).  Porteen has moved for summary judgment on the claims.  In response, Rawlings concedes that the claims against Porteen "as set forth in Counts V and VII should be dismissed."  (Doc. 37 at 25.)  Because Rawlings has conceded the § 1983 and negligence claims against Porteen, there can be no recovery of punitive damages against him.  As such, dismissal of Count VI is also appropriate.

Accordingly, Porteen's Motion for Summary Judgment as to Rawlings' claims in Counts V-VII will be granted.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.     Defendants City of Livingston and Jay Porteen's Motion for Summary Judgment (Doc. 32) is **GRANTED**;

2.     Defendant Steve Kunnath's Motion for Summary Judgment (Doc. 42) is **GRANTED**.

**IT IS ORDERED**.

DATED this 23rd day of September, 2021.

TIMOTHY J. CAVAN
United States Magistrate Judge

23